Filed 1/14/14  In re J.H. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re J.H., a Person Coming Under the Juvenile Court Law. | |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>D.H.,<br><br>Defendant and Appellant;<br><br>J.H.,<br><br>Respondent. | C072201<br><br>(Super. Ct. No. JD232495) |

Appellant D.H. appeals from the juvenile court's orders denying him presumed father status and dismissing him from the dependency case involving the minor J.H. (Code Civ. Proc., § 581d; *Passavanti v. Williams* (1990) 225 Cal.App.3d 1602, 1606.)

1

He contends[1] there is insufficient evidence to support the juvenile court's orders denying him presumed father status pursuant to Family Code section 7611, subdivision (d).[2] We conclude appellant failed to meet his burden of establishing presumed father status. Accordingly, the trial court did not abuse its discretion in denying presumed father status and we affirm the juvenile court's orders.

## BACKGROUND

The minor J.H. (born April 2012) and his mother tested positive for amphetamines at his birth. Mother had no prenatal care and admitted to living with a group who used drugs every day. She told the social worker appellant was not the minor's biological father, but was her live-in boyfriend. She also admitted to previously having her parental rights terminated as to the minor's half sibling.

In June 2012, the Sacramento County Department of Health and Human Services (the Department) filed a dependency petition (Welf. & Inst. Code, § 300) alleging jurisdiction based on mother's substance abuse problems, mother's failure to utilize services through informal supervision, appellant's substance abuse problems, and mother's failure to reunify with the minor's half sibling. The petition and the detention report referred to appellant as the minor's father.[3]

---

[1] In his opening brief, appellant also challenged the juvenile court's ruling on the voluntary declaration of paternity. He abandoned this contention after we took judicial notice of the minor's birth certificate showing appellant did not sign the certificate and was not listed as the father.

[2] Undesignated statutory references are to the Family Code.

[3] References to appellant as the father in the detention report and the dependency petition are not dispositive as to appellant's status. Such statements were mistakes based on an incomplete knowledge of the relevant facts. Once the nature of appellant's relationship became better understood, the Department opposed presumed father status for appellant.

2

The detention report related an April 18, 2012, interview regarding the informal supervision plan between the emergency response social worker, mother, and appellant. The social worker told appellant that she was working only with mother; appellant replied he and mother were a "package deal." Mother was told a safety plan was necessary because she failed to complete services in 2009. She agreed not to be left alone with the minor and to allow the "paternal aunt" to supervise him.

Appellant said he met mother about six months ago, when she was living with several other people. Mother moved in with him about two months ago, and she did not use drugs while in his home. Appellant reported mother was getting prenatal care from a Dr. Allen, and that he was paying for mother's prenatal pills and doctor visits.

Mother and appellant were residing with the minor at the home of appellant's sister, K.H., who was the minor's emergency care provider. On May 14, 2012, K.H. reported mother had moved out of the home as part of the safety plan and appellant was not home because he was helping mother move.

In a May 16, 2012, meeting with the social worker, mother agreed to enter a residential treatment program while appellant remained with the minor at his sister's home. Mother left the program by May 21, 2012, and was living with appellant in the home of appellant's mother. Mother reported the minor was in "good hands" with appellant's sister. On May 25, 2012, K.H. told a social worker she had not seen or heard from mother or appellant. In a June 6, 2012, interview with the social worker, mother and appellant said the substance abuse services were too challenging. Appellant also admitted to regularly using marijuana.

Mother told the social worker appellant was the minor's father. Appellant and mother are not married, but lived together before the minor was born. According to mother, appellant was present at the minor's birth, was named as the father on a birth certificate, and signed a declaration of paternity. Appellant made the same representations as mother regarding paternity.

3

Mother was married to another man, but they separated in December 2008. Her husband lived in Nebraska.

At the June 26, 2012, detention hearing, the juvenile court heard testimony from mother and appellant regarding the identity of the minor's father. Mother testified appellant "signed a declaration under penalty of perjury [that] he's the father, and he's on the birth certificate." Appellant was not the minor's biological father, which mother knew when the declaration was signed. Appellant testified to signing the declaration when he knew he was not the biological father.

The juvenile court stated the declaration could be vacated and void because it "can only be signed by those folks who believe he's the biological parent." And, if appellant knew he was not the biological father when he signed the declaration, then "I don't believe he's the presumed father. I think that voids the document."

Appellant's counsel replied: "[R]egardless of the paternity declaration my client would be requesting presumed status in the alternative of the paternity declaration. He is holding out the child as his own and wishes to be the father for all purposes. In speaking with him before the hearing he said he wasn't sure of everything he was signing, but he wanted to be the father and is on the birth certificate." The juvenile court asked for points and authorities from both parties on whether appellant was entitled to presumed father status pursuant to section 7611.

A jurisdiction/disposition report was filed in July 2012. Mother's husband told the social worker he lived in Nebraska for the last two-and-one-half years, and had had no contact with mother during this time. He was trying to divorce mother, but was unsuccessful in serving her with the paperwork.

On June 30, 2012, appellant was detained on a parole violation and outstanding warrants for robbery, possession of narcotics paraphernalia, and possession of narcotics. His release date was unknown, with the next court hearing scheduled for July 19, 2012. Appellant has an extensive criminal record, including a 1990 conviction for delivery of a

4

substance falsely represented as a controlled substance, a 1992 second degree burglary conviction, a 1998 conviction for possession of a firearm by a felon, a 2000 conviction for corporal injury to a spouse or cohabitant, a 2002 conviction for bringing a controlled substance into prison, 2008 convictions for possession of drug paraphernalia and assault by means likely to produce great bodily injury, and a 2011 conviction for obstructing an officer.

As of June 30, 2012, neither mother nor appellant had contacted the Department regarding visitation. Mother reportedly had called appellant's sister to check on the minor. The Department concluded appellant remained an alleged father[4], and it would be detrimental to the minor to offer services to him.

Father subsequently filed a memorandum of points and authorities supporting presumed father status, while the minor and the Department filed memoranda in opposition. On August 14, 2012, mother's husband filed a declaration that he is not the minor's father and does not wish to participate in the dependency.

The juvenile court held a pre-jurisdictional conference on paternity on September 10, 2012. Appellant's counsel told the juvenile court appellant, if called, would testify he was told by the Department that as part of the safety plan, the minor would go to his sister's home rather than his home. Counsel told the juvenile court appellant left his sister's house because he thought it was in the minor's best interest to get mother into treatment. No witnesses were called. The juvenile court found appellant does not warrant presumed father status because he "spent a very brief time with this child," and "his attempts to become a father are basically to assist the mother because he has a relationship with the mother."

---

[4] An alleged father is a person who has not established biological paternity or presumed father status. (*In re Zacharia D.* (1993) 6 Cal.4th 435, 449, fn. 15.)

Continuing, the juvenile court stated: "[T]hey both signed a declaration under penalty of perjury at the birth of the child when they knew he was not the biological father. The mother was married to somebody else at the time. The child was released to [appellant]'s sister because of the paternity declaration." Mother and appellant left the minor after a "very brief period [of] time" and continued to use controlled substances. After noting appellant's extensive criminal record, the juvenile court found appellant had not "done much to show that he would be an appropriate father for this child," and denied paternity for appellant.

The juvenile court then dismissed appellant from the dependency, sustained the allegations related to mother, and denied reunification services for mother.

DISCUSSION

Appellant contends the juvenile court erred in denying him presumed father status pursuant to section 7611, subdivision (d). We disagree.

Section 7611, subdivision (d), provides for presumed parent status if the person "receives the child into his home and openly holds out the child as his natural child."

"A man who claims entitlement to presumed father status has the burden of establishing by a preponderance of the evidence the facts supporting his entitlement. [Citation.] 'Although more than one individual may fulfill the statutory criteria that give rise to a presumption of paternity, "there can be only one presumed father." ' [Citation.]" (*In re J.O.* (2009) 178 Cal.App.4th 139, 147.)

"[O]nly a presumed father is entitled to custody or a reunification plan. [Citations.] An alleged father is not entitled even to appointed counsel, except for the purpose of establishing presumed fatherhood. [Citations.] Indeed, it is generally said that an alleged father's rights are limited to 'an opportunity to appear and assert a position and attempt to change his paternity status . . . .' [Citations.]" (*In re J.O., supra*, 178 Cal.App.4th at p. 147.)

6

An alleged father cannot satisfy section 7611, subdivision (d), by "constructively" receiving a child into his home, but only by doing so physically. (*Adoption of Michael H.* (1995) 10 Cal.4th 1043, 1051; see *Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 829-830.) However, an alleged father's failure to bring the child physically into his home may be excusable under section 7611, subdivision (d), if he sought to do so but was frustrated by forces beyond his control, such as the mother's actions to prevent it or the taking of custody over the child by a county department of social services. (*In re Andrew L.* (2004) 122 Cal.App.4th 178, 191; see *Kelsey S., supra*, 1 Cal.4th at pp. 849-850.)

Section 7611, subdivision (d), also requires an alleged father to "openly and publicly admit paternity." (*Adoption of Michael H., supra,* 10 Cal.4th at p. 1051.) An alleged father does not hold out a child as his own when he is "unwilling to proclaim paternity when there might have been some cost to him," or he "show[s] an indifference toward establishing or maintaining a parental relationship" with the child. (*In re Spencer W.* (1996) 48 Cal.App.4th 1647, 1654.)

For presumed father status, the alleged father must show he has " 'promptly come[] forward and demonstrate[d] a full commitment to his parental responsibilities -- emotional, financial, and otherwise . . . .' [Citations.] [And] 'has done all that he could reasonably do *under the circumstances*' to demonstrate his commitment to the child. [Citations.]" (*In re Andrew L., supra*, 122 Cal.App.4th at p. 191.)

Appellant has failed to meet his burden of establishing presumed father status. Appellant did not receive the minor into his home. Even assuming appellant could satisfy this requirement by living with the minor at appellant's sister's house (see *S.Y. v. S.B.* (2011) 201 Cal.App.4th 1023, 1033 [separated couple, living with the minor three days a week and most weekends and holidays constitutes taking the child into one's home]), appellant spent no more than a few weeks with the minor. He moved out with mother when she went to residential drug treatment. Once he moved out, appellant never contacted the Department to arrange visits with the minor.

7

There is no credible evidence appellant held the minor out as his child. Appellant and mother testified they knew he was not the biological father when he signed the birth certificate. After the minor's birth certificate was received in the record on appeal, we learned appellant did not sign the certificate and he is not listed as the father. Further, there is minimal evidence of appellant supporting the minor. Appellant's sole financial commitment to the minor was his claim he paid for mother's prenatal pills and visits to the doctor. However, this claim was at least partially contradicted by a statement from the Sutter Hospital social worker that mother had no prenatal care.

During the three weeks he lived with the minor, appellant told the juvenile court he fed the minor, changed his diapers, and walked him around the house at night to help him sleep. However, this brief period of time spent with the minor is not sufficient to establish presumed father status. (*In re D.M.* (2012) 210 Cal.App.4th 541, 554 ["where the child is a newborn detained within days of his [or her] birth, a man with no biological relationship to the child and no marital relationship with the mother will be hard pressed to prove an existing familial tie to the child. He may develop such a relationship over time . . . . But we doubt that such a relationship springs full-blown from the womb"].)

Finally, we reject appellant's contention the juvenile court based its decision on improper considerations, namely his criminal record and substance abuse. "No rule or decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason." (*Davey v. Southern Pacific Co.* (1897) 116 Cal. 325, 329.) This rule applies with equal force to dependency cases. (*In re Jonathan B.* (1992) 5 Cal.App.4th 873, 876.)

Appellant's contributions to the minor's life were minimal at best. After living with the minor for the first three weeks of his life, appellant left the minor to live with mother and did not visit him again. As the juvenile court correctly found, these actions may support an intent to maintain a relationship with mother, but they are inconsistent

8

with a relationship with a child that is accorded presumed father status. It is clear from this record appellant did not come forward and demonstrate a full commitment to his parental responsibilities. We conclude the juvenile court did not abuse its discretion in denying appellant presumed father status.

DISPOSITION

The juvenile court's orders are affirmed.[5]


        HOCH        , J.


We concur:


        RAYE        , P. J.


        ROBIE        , J.

---

[5]    The Department's request for judicial notice filed in this court December 30, 2013, is denied as moot.